62 So.2d 645

**NOVICK et al. v. MILLER et al.**

No. 40641.

Dec. 15, 1952.

Rehearing Denied Jan. 12, 1953.

Irving Novick, Dufour, St. Paul & Levy, Leonard B. Levy, New Orleans, for plaintiffs-appellants.

Fishman, Reuter, Rosenson & D'Aquin, New Orleans, for defendants-appellees.

FOURNET, Chief Justice.

Mrs. Bertha Rose Miller Novick and Mrs. Leah Claire Miller Wise, alleging that they are partners in commendam of the

commercial co-partnership of Miller Brothers, the general partners being the defendants Harry B. Miller and Joseph E. Miller, and that the general partners have failed in their obligations to the partnership and to the plaintiffs as partners in commendam in that, contrary to the requirements of the co-partnership agreement, they failed to take stock inventories for the six-month periods ending June 30, 1948 and June 30, 1949, and to render an accounting to the plaintiffs for those periods, and that they, without the knowledge and consent of the commendam partners, illegally and without consideration raised their salaries from $150 to $250 per week and made arbitrary withdrawals of the partnership funds, thereby changing the distribution of the partnership's profits and losses to plaintiffs' detriment, seek (1) a dissolution and liquidation of the partnership and an accounting, (2) that the general partners be required to return to the partnership "the entire amount of salaries drawn by each of them beginning as of November 19, 1948, plus any sum in excess of $150 per week drawn prior to November 19, 1948," and (3) interest on such amounts as the court may find to have been improperly withdrawn, from dates of such withdrawals until returned to the partnership.

According to the Articles of Co-partnership entered into by private act in June, 1919, it appears that the Miller brothers, David R., Leon H., Harry B. and Joseph E., agreed to form a commercial partnership for the purpose of carrying on the jewelry business in New Orleans under the firm name of Miller Brothers. Among other provisions, the agreement specified percentages of capital interest and distribution of profit and loss with respect to each partner, provided that an account of stock was to be taken and an account between the parties was to be settled in July and January of each year, and that the partners were to devote all of their time to the business of the firm as therein specifically detailed—but was silent as to term of existence and as to salaries. By notarial act of August 3, 1931, the original Articles were supplemented and amended to provide that death of a partner would not cause dissolution of the partnership but the surviving partners were to have the option to purchase the interest of the deceased at book value as of date of death, in proportion to their holdings in the partnership as between the survivors, and made provision for the continuation of the partnership for a 25 year term unless sooner dissolved by mutual consent of those holding 60% interest. Some time thereafter Leon H. Miller withdraw from the partnership and received full payment of his interest therein.

On September 30, 1943, the remaining partners executed an agreement by notarial act amending the original articles as executed in 1919 and amended in 1931 so as to re-state the ownership of the capital assets in the following proportions: David R. Miller, 70%, Harry B. Miller, 15%, Joseph E. Miller, 15%; they admitted indebtedness of the partnership to David R. Miller in the sum of $33,000, provided for repay-

ment thereof at stated intervals, and agreed to accept as partners in commendam David R. Miller's daughters. To give effect to this understanding, an Agreement of Partnership in Commendam was entered into by notarial act dated December 1, 1943, between the three general partners and the two commendam partners, wherein David R. Miller confirmed and ratified his donation and transfer to his two daughters, the partners in commendam, of 19% of his interest in the capital assets and 20% of his rights and liabilities in the profits and losses of the partnership, in the proportions of 9½% and 10%, respectively, to each. David Miller's interest was accordingly reduced. Further recitals of the instrument set out the future proportional ownership of the capital assets and proportional distribution of profits and losses as between the general partners and the partners in commendam; and the latter accepted and agreed to be bound by the original and amended articles of partnership (except that the liability of each was limited to the stated 10%).

David Miller died on January 16, 1948, and his interest was purchased by Harry and Joseph Miller on May 26, 1948. In November of that year the plaintiffs learned that following the purchase of David's interest, the two remaining general partners had increased their salaries from $150 to $250 a week without the knowledge or consent of the commendam partners, whereupon they protested the increase and furthermore objected to the payment of any salaries from that date forward as being without consideration; they also required that amounts in excess of $150 per week paid to the general partners prior to the date of their protest be immediately returned to the partnership. Upon failure of these demands, this suit was instituted.

The defendants in their answer showed that from the time of the formation of the partnership in 1919 it had been the practice, in accordance with a verbal understanding or agreement, that the partners draw salaries which were charged as an expense of the business prior to the computation of profits; and that, accordingly, each drew a salary of $100 per week until 1943, when the plaintiffs' father approached them with the suggestion that his daughters be admitted as commendam partners upon donation to them of a portion of his own interest, to which arrangement the defendants consented on condition that David agree to an increase in salary for the partners to $150 weekly, to be treated as an expense according to the usual procedure; that when the plaintiffs became commendam partners in December, 1943, the payment of salaries in amount of $150 per week to each general partner was already in effect and this fact was well known to and acquiesced in by them as well as by their father, who represented them in all matters; and that they are now estopped to complain of the fact that salaries are paid to the general partners and charged as an expense. The defendants averred that following the death of David Miller in January, 1948, and con-

tinuing until May 26 of that year (the date on which they purchased David's interest), they paid the weekly salary formerly received by David to his widow, at the request and insistence of plaintiffs; and that on June 5, 1948, after acquiring David's interest and assuming the duties formerly performed by him, they increased their salaries; that they are entitled to additional compensation "at least equal to the amount paid to the said David R. Miller prior to his death," and that the salary of $250 weekly is reasonable and fair in the trade, commensurate with their duties and responsibilities. They admit that no physical inventory of the stock was made as of June 30, 1948, and June 30, 1949, but deny that they refused, after formal demand to do so, as alleged by plaintiffs; and further answering, represent that the June, 1948, inventory was not made due to the fact that Joseph E. Miller, the general partner who had always been in charge of taking the physical inventory, was, to the knowledge of plaintiffs, ill and confined to the hospital for the period from June 8 to August 8, 1948, and moreover that such complaint is now irrelevant because plaintiffs were furnished with complete certified audit reports as of December 31, 1948; that the following year Joseph Miller was again seriously ill to the knowledge of plaintiffs when, on June 28, 1949, they requested a semi-annual audit; that he was in a hospital from June 11 to July 25, 1949, then confined to his bed for an additional six weeks; that the plaintiffs refused to accept a statement of operations for the six-month period, insisting on a physical inventory and certified audit, which was in process of preparation when suit was filed; and finally, if these lapses be considered a technical violation of the partnership agreement, that they were of a minor nature, unintentional and unavoidable. The defendants also deny making arbitrary withdrawals, claiming that such as were made were proper and in accordance with long-standing practices of the partners and were continued after the plaintiffs came in, with their full knowledge and without objection.

The trial judge, in a well considered opinion, held that the complaints of the plaintiffs did not justify a dissolution of the partnership; that even though the partnership agreements contained no provision for the payment of salaries to the general partners, this was a practice of thirty years' duration, pursuant to an understanding between them—a matter with which plaintiffs were acquainted or had constructive knowledge at time of their admission and to which they had acquiesced for five years without objection. He found also that there was justification for an increase in salaries to the general partners, but limited the amount to $225 per week each, or a total of $450 per week jointly, from the date of increase, June 5, 1948, and decreed that the defendants must return to the partnership all amounts drawn after that date in excess of the above sums, with legal interest from date of each withdrawal until paid.

We fully concur in the judgment of the trial court. While the articles of partnership make no provision for the payment of salaries to the general partners, there is nothing therein to prohibit a collateral verbal agreement to that effect. When the plaintiffs were accepted as partners in commendam under the instrument of December 1, 1943, the partnership agreement was construed by all as contemplating salaries of $150 per week to the general partners; the commendam partners took cognizance of the original and amended articles of partnership and agreed to be bound thereby, and took the business as they found it. The record shows, moreover, not only that they knew these salaries were being paid, but, by their own admission, their father had full authority to act for them and they expressed complete satisfaction with whatever he may have done. The withdrawals of which plaintiffs complain were for payment of income taxes which, according to the custom of the partners up to the time of David's death, were paid by the firm, the amounts charged to the partners' accounts, and equalized at the end of each year. Up to the time of David's death the commendam partners' income taxes were paid in the same way. Following later objection by the plaintiffs, however, the defendants instituted the practice of balancing drawings between partners whenever money was drawn. We find, as did the trial judge, that the alleged causes for dissolution are not of a sufficiently serious nature to authorize such a decree. Dissolution will not be ordered for trifling causes or temporary grievances that involve no permanent mischief or injury. See 40 Am. Juris, Partnership, 245, p. 300; 118 A.L.R., pp. 1422, 1423.

The plaintiffs are contending here that the partnership terminated in June, 1944, by expiration of its stated term, in view of the fact that by the agreement of August 3, 1931, Article 9 of the original Articles was amended to read: "The Co-Partnership shall continue for a period of twenty-five (25) years from date hereof * * *;" The defendants, on the other hand, take the position that this clearly means 25 years from the date of amendment —or, if ambiguous, according to the intention of the parties, who have all consistently so understood the amendment. This issue was neither raised by the pleadings nor passed upon by the trial court, and cannot be considered here for the first time since this is not a court of original jurisdiction.

The defendants answered the appeal, asking that they be declared entitled to the salary of $250 each per week, which they claim is a reasonable amount of salary increase and one which the nature of the business warrants. They argue, moreover, that the partners in commendam cannot complain, for such partners, according to the provisions of the LSA–Civil Code, Article 2844, are "not considered as a partner, further than is specially provided in this section." (Composed of Arts. 2839 et seq.) In the alternative, they contend the trial

judge erroneously ordered them to pay interest on the amounts they must return to the partnership.

■ While we think that the defendants had a right to raise their salaries as conditions permitted, we do not think it was contemplated by the articles of partnership, in view of the fact that there are commendam partners, that the general partners should raise their salaries beyond a reasonable amount with reference to the nature and type of business being done, so as to arbitrarily deprive the commendam partners of a profit. In the instant case the trial judge allowed the remaining partners to divide the salary formerly paid to David when they assumed his duties and obligations; we think this is fair and are not disposed to disturb it. We think, too, that the trial judge properly ordered the defendants to pay interest on amounts withdrawn in excess of $225 each per week, from date of withdrawal until paid, for it is expressly provided in the LSA–Civil Code that "The partner * * * owes the interest on such sums as he may have taken out of the funds of the partnership, from the day he has received them." Art. 2858. The excerpt from the case of Quintero v. Caffery, 160 La. 1054, 108 So. 87, relied on by the defendants in support of their contention, is not controlling here. The case is clearly inapposite from a factual standpoint and therefore not pertinent.

For the reasons assigned, the judgment appealed from is affirmed.